# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY L. SARGENT, et al.,

    Plaintiff,

vs.

PAUL SIMONETA, et al.,

    Defendants.

_____/

No. CIV S-10-1420-CMK

MEMORANDUM OPINION AND ORDER

Plaintiffs, proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court is defendants' motion for summary judgment (Doc. 43), and plaintiffs' motion to for leave to file an amended complaint (Doc. 45). A hearing on defendants' motion for summary judgment was held on September 8, 2011, before the undersigned in Redding, California. Defense counsel Gary Brickwood appeared on behalf of the defendants. No appearance was made on behalf of either plaintiff.

/ / /

/ / /

**A.   BACKGROUND**

This case was originally filed in the Northern District, but transferred on request of plaintiffs, after they were notified by defense counsel that it was filed in the wrong district. The claims arise out the defendants' refusal to assist plaintiffs, who claim to be disabled senior citizens in need of protection and/or assistance from private individuals.

Plaintiffs claim they contacted the Adult Protective Services, and were denied services by Mr. Simoneta. Based on that denial, they requested assistance from Mr. Baugh and s Ms. Tracy, who also denied them assistance.

**B.   UNDISPUTED FACTS**

The motion for summary judgment/adjudication is based solely on the facts as alleged in the complaint, and the declaration of Mr. Simoneta. Mr. Simoneta's declaration contains information regarding the contact Mr. Atterbury had with the Shasta County Adult Protective Services (APS), and APS's role in general with disabled/dependent adults. Mr. Simoneta does not recall any communication with Mr. Sargent, but based on the facts alleged in the complaint determined if contact with APS was made, APS was not in the position to help him either.

Plaintiffs allege in the complaint that plaintiff Atterbury was residing at a friend's house when the friend died. He had money and property left at the house, which the friend's wife refused to return. Plaintiff Sargent suffered from a sudden and unexpected eviction, and had a dispute with his sister over his parent's will. These are the harms the defendants failed to stop or help them with.

Plaintiff fail to provide any evidence for the court to review. In addition, they fail to adequately dispute any of the evidence defendants provide.

**C.   MOTION FOR SUMMARY JUDGMENT**

Defendants argue they are entitled to summary judgment/adjudication on two basis: there was no duty to protect the plaintiffs to give rise to a § 1983 action, and they are

1  entitled to qualified immunity.

2        In opposition, plaintiffs filed a motion to amend the complaint, and an opposition. They

3  have not, however, submitted any evidence in support of their motion.

4        1.    Standards

5        Summary judgment is appropriate when it is demonstrated that there exists "no

6  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

7  matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

11  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here

12  the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

13  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

14  to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered,

15  after adequate time for discovery and upon motion, against a party who fails to make a showing

16  sufficient to establish the existence of an element essential to that party's case, and on which that

17  party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning

18  an essential element of the nonmoving party's case necessarily renders all other facts

19  immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as

20  whatever is before the district court demonstrates that the standard for entry of summary

21  judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

22        If the moving party meets its initial responsibility, the burden then shifts to the

23  opposing party to establish that a genuine issue as to any material fact actually does exist. See

24  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

25  establish the existence of this factual dispute, the opposing party may not rely upon the

26  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

2.  <u>Duty to Protect</u>

Plaintiffs' claims are a little unclear.  It appears, based on the facts alleged in the complaint, that plaintiffs, who claim they are disabled senior citizens, were mistreated or abused in some fashion by non-party individuals.  As a result of that abuse, the plaintiffs turned to the Shasta County Adult Protective Services (APS) in order to obtain some assistance in dealing with their alleged abusers.  Defendant Simoneta, who was a supervisor at APS, attempted to assist plaintiff Atterbury to the extent he was able to, but informed plaintiff that the role of APS was not to assist individuals in civil actions, but rather to assist dependent adults who face abuse by their care custodians.  Mr. Simoneta did not find anything in his conversations with plaintiff to indicate they would fall within the realm of the assistance APS could offer.  Once APS determined it was unable to assist, plaintiffs turned to the Board of Supervisors for assistance, who were similarly unable or unwilling to assist plaintiffs.

A claim involving a violation of an individual's due process rights would fall under 28 U.S.C. § 1983.  Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  42 U.S.C. § 1983.  "Traditionally, the requirements for relief under [§] 1983 have been articulated as (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law."  <u>Crumpton v. Gates</u>, 947 F.2d 1418, 1420 (9th Cir. 1991).  Generally, plaintiffs are required to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes."  <u>Gibson v. United States</u>, 781 F.2d 1334, 1338 (9th Cir. 1986); <u>see also</u> <u>WMX Techs., Inc. v. Miller</u>, 197 F.3d 367, 372 (9th Cir. 1999) (en banc).

5

1  The Due Process Clause of the Fourteenth Amendment provides that "[n]o State
2  shall . . . deprive any person of life, liberty, or property, without due process of laws." "But
3  nothing in the language of the Due Process Clause itself requires the State to protect the life,
4  liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago
5  County Dep't of Soc. Serv., 489 U.S. 198, 195 (1989).  "[T]he Due Process Clause . . . was
6  intended to prevent government 'from abusing [its] power, or employing it as an instrument of
7  oppression.'" Id. at 196 (quoting Davidson v. Cannon, 474 U.S. at 348). "Its purpose was to
8  protect the people from the State, not to ensure that the State protected them from each other."
9  Id.
10  Here, plaintiffs are not claiming abuse or mistreatment directly at the hands of the
11  defendants.  Rather, the claims are more of a failure to protect.  They claim the defendants, as
12  part of the services provided to disabled adults, had the duty to assist them and in not doing so
13  abused, or allowed the abuse of plaintiffs to continue.
14  This is exactly the type of protection the Supreme Court has determined is not
15  conferred by the Due Process Clause. See id. ("Consistent with the principles, our cases have
16  recognized that the Due Process Clause generally confer no affirmative right to governmental
17  aid, even where such aid may be necessary to secure life, liberty, or property interests of which
18  the government itself may not deprive the individual.").  There are, of course, exceptions to this
19  general rule, such as where the State has an affirmative duty to care and protect particular
20  individuals such as incarcerated prisoners. See id. at 198.  However, no such exception is present
21  here, where there is no allegation that the plaintiffs were in the State's custody at the time of the
22  alleged abuse.
23  Accordingly, as there was no affirmative duty of the defendants to protect the
24  plaintiffs from abuse at the hands of other individuals, there can be no violation of the Due
25  Process Clause to give rise to a § 1983 action.
26  / / /

### 3. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even

7

1  if the plaintiff has alleged a violation of a clearly established right, the government official is
2  entitled to qualified immunity if he could have "reasonably but mistakenly believed that his . . .
3  conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir.
4  2001); see also Saucier, 533 U.S. at 205.
5        Here, as discussed above, no constitutional violation can be established on the
6  facts alleged in the complaint. As there is no duty of government officials to protect individuals
7  from harm caused by other individuals, there can be no constitutional violation. Even if such a
8  duty exits, it certainly cannot be considered to be clearly established under the facts alleged in the
9  complaint. As such, the defendants are entitled to qualified immunity.

      **D.**    **MOTION TO AMEND:**

11        In addition to the opposition to the summary judgment, plaintiffs also filed a
12  motion to amend their complaint. This is an attempt to cure some perceived defects in the
13  complaint, as well as adding additional factual allegations against the defendants. Apparently,
14  there was additional contact between the plaintiffs and APS after the complaint was filed, which
15  the plaintiffs wish to add in order to bolster their claims.
16        The Federal Rules of Civil Procedure allow a plaintiff to amend his complaint
17  once as of right prior to being served with a responsive pleading, or upon leave of court. See
18  Rule 15(a). However, an amended complaint is a complaint in which the plaintiff sets forth
19  allegations concerning events which took place before the original pleading was filed. In
20  contrast, where a plaintiff sets forth allegations concerning events which took place after the
21  original pleading was filed, the plaintiff is attempting to supplement his complaint. See Cabrera
22  v. City of Huntington Park, 159 F.3d 374, 382 (9th Cir. 1998). Supplemental complaints are
23  governed by Rule 15(d).
24        Rule 15(d) provides: "On motion and reasonable notice, the court may, on just
25  terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or
26  event that happened after the date of the pleading to be supplemented." "Rule 15(d) is intended

to give district courts broad discretion in allowing supplemental pleadings." Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988).

Here, plaintiffs' "amended complaint" is actually a "supplemental complaint" as it includes new allegations concerning events which took place after the original complaint was filed. See U.S. ex rel. Wulff v. CMA, Inc., 890 F.2d 1070, 1073 (9th Cir. 1989) (the title of the pleading is not determinative, i.e., a pleading labeled an "amended pleading" will be treated as a supplemental pleading if the new facts alleged occurred after the original complaint was filed). Supplemental pleadings can only be filed with leave of court and upon such terms as are just. See Rule 15(d), Wagner v. Prof'l Eng'rs, 354 F.3d 1036, 1052 (9th Cir. 2004).

The additional allegations set forth in the supplemental complaint do not cure the defects in the plaintiffs' claims. There still is no affirmative duty of the defendants to protect the plaintiffs from the harms they suffered. The additional allegations, which amount to further denials of assistance, do not change that. Thus, the amendment should be denied.

### E. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment (Doc. 43) is granted;

2. Plaintiff's motion for leave to file an amended complaint (Doc. 45) is denied; and

3. The Clerk of the Court is directed to enter judgment and close this case.

DATED: September 21, 2011

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE